IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 08-57-16 (BJR) |
| | : | |
| AURELIO CANO FLORES | : | |

**DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE**

Defendant, Aurelio Cano Flores ("Mr. Cano Flores" or "Defendant"), through undersigned counsel, respectfully requests that this Court suppress all evidence against him arising from the unlawful electronic surveillance conducted by the government on the six telephone lines containing calls which the government has identified as calls it intends to play at trial.[1]  The government alleges that all of the designated lines intercepted conversations in which Mr. Cano Flores was a participant.  As grounds therefore, Defendant states:

1. The indictment jointly charges twenty defendants with one count of narcotics conspiracy involving the manufacture and distribution of five kilograms or more of cocaine and 1000 kilograms or more of marijuana for importation into the United States, 21 U.S.C. §§ 959, 960, 963 and 18 U.S.C. § 2, and a criminal forfeiture count, 21 U.S.C. §§ 853 and 970.[2]

2. The indictment appears to be based entirely upon evidence gleaned from a massive wiretap scheme administered in Houston, Texas, but directed primarily against Mexican nationals in Mexico.

---

[1] On Friday afternoon, January 25, 2013, while compiling the parties' joint pretrial statement, the government informed the defense that the wiretap calls listed on the government's exhibit list were the final calls designated by the government and that the roster of calls to be played at trial would not change.

[2] Defendants other than Mr. Cano-Flores, in various combinations, are charged with two additional counts of distribution of cocaine for importation to the United States for specific acts on October 5, 2007 and November 30, 2007, 21 U.S.C. § 959 and 18 U.S.C. § 2.

3. All of the intercepted calls designated by the government to be played at trial are on lines that clearly are Mexican phone lines, identified as such by the Urban Fleet Member Identifier numbers assigned to them.

4. Mr. Cano Flores seeks suppression of all evidence obtained during the course of and derived from the following wiretap orders:

    a. orders issued on January 22, 2007 and February 20, 2007 authorizing interception of communications over a cell phone assigned International Mobile Subscriber Identity number 334010010016670 and Urban Fleet Mobile Identifier number 62*210743*7, which the government designated as Target Device 12;

    b. the order issued on March 8, 2007 authorizing interception of communications over a cell phone assigned International Mobile Subscriber Identity number 334010010119101 and Urban Fleet Mobile Identifier number 62*15*37010, which the government designated as Target Device 21;

    c. orders issued on March 21, 2007, April 19, 2007, May 18, 2007, June 15, 2007 and July 13, 2007 authorizing interception of communications over a cell phone assigned International Mobile Subscriber Identity number 334010010274353 and Urban Fleet Mobile Identifier number 62*244056*6, which the government designated as Target Device 22;

    d. orders issued on May 18, 2007, June 15, 2007 and July 13, 2007 authorizing interception of communications over a cell phone assigned International

Mobile Subscriber Identity number 334010010303243 and Urban Fleet Mobile Identifier number 62*15*84590, which the government designated as Target Device 31;[3]

   e.   the order issued on July 13, 2007 authorizing interception of communications over a cell phone assigned International Mobile Subscriber Identity number 334010010016678 and Urban Fleet Mobile Identifier number 62*17337*5, which the government designated as Target Device 37; and

   f.   orders issued on August 24, 2007, October 19, 2007 and November 16, 2007 authorizing interception of communications over a cell phone assigned International Mobile Subscriber Identity number 334010004724262 and Urban Fleet Mobile Identifier number 52*332568*11, which the government designated as Target Device 49.

   5.   Mr. Cano Flores seeks to suppress all conversations intercepted during the course of these wiretaps, as well as all evidence, including observations of law enforcement officers directed to conduct surveillance, based upon the interception of conversations during the wiretap, and other evidence derived from the unlawful interception of wire and electronic communications at the time of trial, including all wiretaps applied for as a result of information gained pursuant to the unlawful wiretaps.

   6.   This motion is made on the following grounds: (a) the wiretap orders did not authorize interception of calls between two phones in Mexico; (b) all the wiretap calls the govt intends to play at trial were intercepted from Mexican telephone lines; and (c) Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2510, *et seq* does not grant authority to intercept communications outside the United States.

---

   [3] In some affidavits, this Target Device was listed as Number 32, but the International Mobile Subscriber Identity number and Urban Fleet Mobile Identifier number were the same as for Target Device Number 31.

WHEREFORE, for the above reasons, as well as those set forth in the attached Memorandum of Points and Authorities, Defendant respectfully request that this Court suppress all evidence against him arising from the unlawful electronic surveillance conducted by the government on the six telephone lines containing calls which the government intends to play at trial.

Respectfully submitted

/s/   Kristen Grim Hughes

Kristen Grim Hughes
DC Bar No. 456171
1390 Chain Bridge Road, #530
McLean, Virginia  22101
(703) 798-4444  phone
kghughes@hotmail.com

/s/   Richard K. Gilbert

Richard K. Gilbert
D.C. Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857  phone
rkgesq@juno.com

Attorneys for Defendant Aurelio Cano Flores
Appointed by the Court

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v | : | Crim. No 08-57-16 (BJR) |
| | : | |
| AURELIO CANO FLORES | : | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE

Defendant, Aurelio Cano Flores ("Mr. Cano Flores" or "Defendant"), through undersigned counsel, respectfully submits this memorandum of points and authorities in support of his supplemental motion to suppress all evidence against him arising from the unlawful government wiretaps on the six telephone lines containing calls which the government intends to play at trial

**I.   STANDING**

The Federal Wiretap Statute, enacted in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, is codified at 18 U.S.C. §§ 2510 through 2522.  Section 2518 (10)(a), which authorizes "aggrieved persons" to move to suppress both the contents of the intercepted communications and the evidence derived therefrom, provides in pertinent part:

> Any aggrieved person in a trial, hearing, or proceeding before any court, department, officer, agency, regulatory body, or other subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that -
>
> (i)   the communication was unlawfully intercepted;
> (ii)  the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

An "aggrieved person" includes a party or participant to the intercepted wire communications, as well as the person on whose premises the intercepted conversation occurred.

5

*Alderman v. United States*, 394 U.S. 165, 174 (1969).  The government alleges that Defendant Aurelio Cano Flores was a participant in conversations on each of the challenged wiretaps. Thus, he is an "aggrieved person" under 18 U.S.C. 2518 (10)(a), and has standing to challenge the evidence from the wiretaps.  *See United States v. Eiland*, 398 F.Supp.2d 160 (D. D.C. 2005).

## II. ALL THE WIRETAP CALLS THE GOVT INTENDS TO PLAY AT TRIAL WERE INTERCEPTED FROM MEXICAN TELEPHONE LINES

The affidavits incorporated in the applications for wiretaps of the challenged lines show that all the targeted phone lines were Mexican telephone lines.[4]

### A. Target Device 12, IMSI 334010010016670, UFMI 62*210743*7.

The supporting affidavits state the "representatives of United States Nextel do not have access to billing and other subscriber information, including the telephone number assigned to Target Device #12 since it is a Mexico-based Nextel cellular phone with service provided by the Mexican Division of Nextel Communications and Boost Communications (hereinafter, Mexico Nextel)."  *Affidavit*, Misc. No. 07-25, January 22, 2007 at 32 and February 20, 2007 at 30.)

### B. Target Device 21, IMSI 334010010119101, UFMI 62*15*37010.

The supporting affidavit states the "representatives of United States Nextel do not have access to billing and other subscriber information, including the telephone number assigned to Target Device #21 since it is a Mexico-based Nextel cellular phone with service provided by the

---

[4] A series of documents, named *Application for an Order Authorizing the Interception of Wire Communications, Affidavit in Support of Application*, and *Order Authorizing the Interception of Wire Communications*, filed in the United States District Court, Southern District of Texas (Houston Division) on various dates was produced by the government in discovery. Defendant cites to these documents as "*Application*," "*Affidavit*" and/or "*Order*" identified by the relevant filing date and case number for each.  Due to the voluminous nature of the documents, defendant is not attaching them to this memorandum, but will make them available to the Court if requested.  In addition, as many of the documents produced in discovery are subject to a protection order, Defendant cites only to the redacted versions of the documents so that filing this motion and memorandum under seal will not be necessary.

Mexican Division of Nextel Communications and Boost Communications (hereinafter, Mexico Nextel)." *Affidavit*, Misc. No. 07-85, March 8, 2007 at 29.

### C.   Target Device 22, IMSI 334010010274353, UFMI 62*244056*6.

The supporting affidavits state the "representatives of United States Nextel do not have access to billing and other subscriber information, including the telephone numbers assigned to Target Devices #22 and #23, since they are Mexico-based Nextel cellular phones with service provided by the Mexican Division of Nextel Communications and Boost Communications (hereinafter, Mexico Nextel)." *Affidavit*, Misc. No. 07-102, March 21, 2007 at 33; April 19, 2007 at 31; May 18, 2007 at 32; June 15, 2007 at 38; and July 13, 2007 at 45.

### D.   Target Device 31, IMSI 334010010303243, UFMI 62*15*84590.

The "62" prefix in the Nextel Urban Fleet Mobile Identifier corresponding to IMSI 334010010303243 is only assigned to phone numbers in Mexico.

### E.   Target Device 37, IMSI 334010010016678, UFMI 62*17337*5.

The supporting affidavit states the "representatives of United States Nextel do not have access to billing and other subscriber information, including the telephone numbers assigned to Target Devices #22, #23, #30, #37 and #38, since they are Mexico-based Nextel cellular phones with service provided by the Mexican Division of Nextel Communications and Boost Communications (hereinafter, Mexico Nextel)." *Affidavit*, Misc. No. 07-102, July 13, 2007 at 37.

### F.   Target Device 49, IMSI 334010004724262, UFMI 52*332568*11.

The "52" prefix in the Nextel Urban Fleet Mobile Identifier corresponding to IMSI 334010004724262 is only assigned to phone numbers in Mexico.

**III.    NONE OF THE IDENTIFIED USERS OF THE TARGETED DEVICES IS ALLEGED TO HAVE CONDUCTED NARCOTICS-RELATED BUSINESS OR ACTIVITIES IN THE UNITED STATES**

The affidavits incorporated in the applications for orders authorizing wiretaps of the challenged lines show that none of the identified users of the targeted devices is alleged to have conducted narcotics-related business or activities in the United States.

**A.    TRES (Samuel Flores Borrego, Defendant 6) is identified by the government as the user of Target Devices 12 and 22.**

Statements in the supporting affidavits include:

"TRES is a Hispanic male based in Reynosa, Mexico…" *Affidavit*, Misc. No. 07-25, January 22, 2007 at 17 and *Affidavit*, Misc. No. 07-85, March 8, 2007 at 18.

"TRES is a Hispanic male based in Miguel Aleman, Mexico…" *Affidavit*, Misc. No. 07-25, February 20, 2007 at 19. (The same averment is made in *Affidavit*, Misc. No. 07-102, March 21, 2007 at *17;* April 19, 2007 at 14; May 18, 2007 at 16; June 15, 2007 at 17; and July 13, 2007 at 19.)

"Affiant believes TRES does not conduct narcotics related activity while in the United States, but instead waits until in the secure confines of Mexico, and in particular the Reynosa, Mexico area." *Affidavit*, Misc. No. 07-25, January 22, 2007 at 32 and February 20, 2007 at 30.

"Agents know that TRES conducts his drug trafficking activity within Mexico." *Affidavit*, Misc. No. 07-102, March 21, 2007 at 33; April 19, 2007 at 31; and May 18, 2007 at 32.

"Your affiant does not believe that TRES [] enters the United States in the course of conducting drug-related business *Affidavit*, Misc. No. 07-102, March 21, 2007 at 33; April 19, 2007 at 31; May 18, 2007 at 32; June 15, 2007 at 38; and July 13, 2007 at 45.)

"Thus far, agents have been unable to identify locations used by TRES or other top members of the organization TRES is in contact with due to their geographical locations in Mexico".  *Affidavit*, Misc. No. 07-25, January 22, 2007 at 32 and February 20, 2007 at 30.

"TRES also frequently travels to the interior of Mexico to conduct drug related activities…" *Affidavit*, Misc. No. 07-25, January 22, 2007 at 32

"[T]he majority of if not all the co-conspirators of TRES are in Mexico." *Affidavit*, Misc. No. 07-25, February 20, 2007 at 31.

    **B.**    **CARRILLO (allegedly Aurelio Cano Flores, Defendant 16) is identified by the government as the user of Target Devices 21 and 31.**

Statements in the supporting affidavits include:

"CARRILLO, a Hispanic male based in Mexico, is a member of the Gulf Cartel…" *Affidavit*, Misc. No. 07-85, March 8, 2007 at 16; *Affidavit*, Misc. No. 07-308, May 18, 2007 at 15; June 15, 2007 at 18; and July 13, 2007 at 18.

"CARRILLO uses his telephone while in Mexico to conduct narcotics-related activity… , *Affidavit*, Misc. No. 07-85, March 8, 2007 at 29.  *Affidavit*, Misc. No. 07-308, May 18, 2007 at 15; June 15, 2007 at 18; and July 13, 2007 at 18.

"[Y]our affiant believes that CARRILLO conducts all his drug business in Mexico, and possibly does not ever enter the United States.  *Affidavit*, Misc. No. 07-85, March 8, 2007 at 29 and *Affidavit*, Misc. No. 07-308, May 18, 2007 at 39 and June 15, 2007 at 29.

"CARRILLO used Target Device #32 (sic) while in Mexico, where he conducts all his drug-related activities, and possibly does not ever enter the United States."  *Affidavit*, Misc. No. 07-308, July 13, 2007 at 39.

    **C.**    **HUMMER (Jaime Gonzalez-Duran, Defendant 5) is identified by the government as the user of Target Device 37.**

Statements in the supporting affidavits include:

9

"HUMMER is a Hispanic male believed to be living and working in Miguel Aleman, Mexico". *Affidavit*, Misc. No. 07-102, March 21, 2007 at 18, April 19, 2007 at 15, May 18, 2007 at 16 and July 13, 2007 at 19.

"HUMMER is a Hispanic male believed to be living and working in Nuevo Laredo, Mexico." *Affidavit*, Misc. No. 07-85, March 8, 2007 at 19 and *Affidavit*, Misc. No. 07-102, June 15, 2007 at 18.

"Mexican confidential sources have identified HUMMER as the number three-ranking member of Los Zetas operations in Mexico and the head of the Nuevo Laredo cell of the Los Zetas, operating in and around the Nuevo Laredo and Miguel Aleman, Mexico area." *Affidavit*, Misc. No. 07-102, March 21, 2007 at 18; April 19, 2007 at 15; May 18, 2007 at 17; June 15, 2007 at 18; and July 13, 2007 at 19.

"[Y]our affiant does not believe [] HUMMER enters the United States in the course of conducting drug-related business. *Affidavit*, Misc. No. 07-102, June 15, 2007 at 38, July 13, 2007 at 45.

### D. TECNICO (Jose Luis Del Toro Estrada) is identified by the government as the user of Target Device 49.

Statements in the supporting affidavit include:

"[Although] TECNICO is known to have a home and communications business in McAllen, Texas … TECNICO conducts most of his narcotics-related business in Mexico, where he has a Reynosa-based business…" "Thus, surveillance of TECNICO while in the United States is not likely to yield evidence of criminal activity." *Affidavit*, Misc. No. 07-51, August 24, 2007 at 31, October 19, 2007 at 17 and November 16, 2007 at 20.

## IV.  THE WIRETAP ORDERS DID NOT AUTHORIZE INTERCEPTION OF COMMUNICATIONS IN MEXICO

The wiretap orders for the challenged lines did not authorize interception of calls between two phones in Mexico. The orders in Misc. No. 07-25, Misc. No. 07-51, Misc. No. 07-85, Misc. No. 07-102 and Misc. No. 308 only authorized interception when the target phones were in the United States.  They all had identical language: "IT IS FURTHER ORDERED that in the event Target Device #[xx] and/or #[xx] is transferred outside the territorial jurisdiction of this Court, interception may take place within any other jurisdiction within the United States."  18 U.S.C. 2518 (10) (a) (iii) requires suppression if, "the interception was not made in conformity with the order of authorization or approval."  The interception of calls in Mexico was not authorized by the wiretap orders; therefore the calls should be suppressed.

## IV.  TITLE III DOES NOT GRANT AUTHORITY FOR INTERCEPTION OF COMMUNICATIONS WHICH OCCUR OUTSIDE THE UNITED STATES

Title III sets forth the jurisdictional limits of an order to intercept communications, provides the scope of the communications that can be lawfully intercepted with a wiretap and delineates the procedure for obtaining such a wiretap:

> Upon application [a] judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications ***within the territorial jurisdiction of the court*** in which the judge is sitting (and ***outside that jurisdiction but within the United States*** in the case of a mobile interception device authorized by a Federal court within such jurisdiction), if the judge determines on the basis of the facts submitted by the applicant that . . .

18 U.S.C. § 2518(3) (emphasis added).

By its language, Title III does not grant a judge authority to authorize interception of communications which occur outside the United States.

A fair reading of the statute suggests that Congress did not intend to allow for interception of communications in another country.  The statute limits the jurisdiction of the

11

authorizing court in the case of a mobile interception device to the United States but is silent as to an interception which not made by a mobile device.  Defendant submits that the statute does not explicitly restrict all interceptions to the United States because, at the time the Statute was enacted, it was not contemplated that an interception would occur outside the United States.  It was contemplated that a mobile interception device could travel outside the country; therefore, the jurisdiction of a court in regard to mobile devices was expressly restricted.

Even if the language of 18 U.S.C. § 2518(3) is ignored, Defendant submits that a judge does not have jurisdiction to issue an order to intercept foreign communications under Title III.  It is a general proposition that "Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-21, has no extraterritorial force." *United States v. Barona,* 56 F.3d 1087, 1090 (9th Cir. 1995) (quoting *United States v. Peterson*, 812 F.2d 468, 490 (9th Cir. 1987)).  In a line of cases, largely based on the challenge to authorization of wiretaps by foreign authorities (and not, as here, the jurisdiction of a United States court to order the interception of communications occurring in a foreign country), courts interpreting whether federal wiretap law applies outside of the United States have uniformly held that, "Title III has no extraterritorial force." *United States v. Cotroni*, 527 F.2d 708, 711 (2nd Cir. 1975) (refusing to apply Title III to a foreign wiretap).

A basic canon of the construction of federal statutes is that, "unless a contrary intent appears, federal statutes apply only within the territorial jurisdiction of the United States." *Cotroni*, 527 F.2d at 711, referencing *Foley Brothers v. Filardo*, 336 U.S. 281, 285, (1949); *Air-Line Stewards and Stewardesses Association International v. Trans World Airlines, Inc.*, 273 F.2d 69, 70 (2d Cir. 1959) (per curiam), cert. denied, 362 U.S. 988, (1960).  In *United States v. Angulo-Hurtado*, 165 F. Supp.2d 1363, 1368 (N.D. Ga. 2001), federal agents utilized communications uncovered pursuant to an allegedly unlawful wiretap authorized by Columbian

12

authorities as evidentiary support in the agent's declaration for their own separate United States wiretap.  *Id*. at 1366-67.  Although the facts in *Angulo-Hurtado* are plainly different from those presented here, language used by the court in reaching its decision is instructive.  The court noted that American wiretap law does not include any "provision for obtaining authorization for a wiretap in a foreign country."  *Id.* at 1369 (citations omitted).  Accordingly, a federal judge lacks the authority to wiretap a foreign phone.  *Id*.

This same principle—a federal judge lacks the authority to issue a foreign wiretap—was applied to a defendant's challenge to a wiretap conducted by foreign law enforcement in a Second Circuit case, *United States v. Toscanino*, 500 F. 2d 267, 279 (2d. Cir. 1974).  In *Toscanino*, federal government officials allegedly bribed a Uruguayan official to conduct electronic surveillance on a foreign citizen in Uruguay, and requested that the Uruguayan official forward the results of the surveillance to federal authorities in the United States.  *Id.* at 270.  After being arrested, the defendant contended that the United States government violated federal wiretap law as a result of its unlawful surveillance in contravention of Title III.  *Id.* at 279.

The court disagreed with the defendant and held that no violation of federal wiretap law occurred.  *Id.* at 279-280.  The court explained that a federal judge did not have power to authorize a wiretap on a phone in Uruguay, and thus no violation of federal statutory law was possible: "In prescribing the procedures to be followed in obtaining a wiretap authorization, see 18 U.S.C. § 2518, the statute significantly makes no provision for obtaining authorization for a wiretap in a foreign country."  *Id.*  Because nothing in the statutory framework prohibited the extraterritorial interception of communications by foreign authorities, the court held that United States officials did not violate federal wiretap law when they bribed the local Uruguayan employee to conduct electronic surveillance on the defendant in Uruguay, and then forwarded that surveillance to government officials in the United States.  *Id.*

Defendant submits that the reasoning of the courts which have considered whether Title III applies abroad supports the proposition that a United States court has no judicial authority to order the monitoring and interception of communications between telephones located entirely in a foreign country.  Title III does not authorize interception of communications which occur in another country; therefore, all intercepted calls on the six telephone lines which the government intends to play at trial, and all evidence derived from those wiretaps, should be suppressed.

WHEREFORE, for the above reasons, as well as those set forth in the attached Supplemental Motion in Limine, Defendant respectfully request that this Court suppress all evidence against him arising from the unlawful electronic surveillance conducted by the government on the six telephone lines containing calls which the government intends to play at trial.

Respectfully submitted

/s/   Kristen Grim Hughes

Kristen Grim Hughes
DC Bar No. 456171
1390 Chain Bridge Road, #530
McLean, Virginia  22101
(703) 798-4444  phone
kghughes@hotmail.com

/s/   Richard K. Gilbert

Richard K. Gilbert
D.C. Bar. No. 939884
601 Pennsylvania Avenue, N.W.
Suite 900, South Building
Washington, D.C.  20004
(202) 898-0857  phone
rkgesq@juno.com

Attorneys for Defendant Aurelio Cano Flores
Appointed by the Court