IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 08-CR-057-16 (BJR) |
| | : | |
| AURELIO CANO FLORES, | : | |
| a.k.a "Yankee," a.k.a. "Yeyo," | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
SUPPLEMENTAL MOTION TO SUPPRESS WIRETAP EVIDENCE

Now comes the United States of America (hereinafter the "Government"), by and through the undersigned attorneys of the Narcotic and Dangerous Drug Section, Criminal Division, United States Department of Justice, and makes its opposition to Defendant Aurelio Cano Flores' (hereinafter "Defendant") Supplemental Motion to Suppress Wiretap Evidence.[1] In his motion, Defendant seeks to suppress all evidence obtained from the Government's interception of wire communications on six different telephones, all pursuant to court orders. Defendant argues for suppression on the following grounds: (1) the orders did not authorize the interception of calls between phones in Mexico; (2) all of the calls the Government intends to play at trial were intercepted from Mexican telephone lines; and (3) Title III of the Omnibus Crime Control and Safe Streets Act of 1968, does not grant authority to intercept communications outside of the United States.[2]

---

[1] The instant Motion was filed on January 30, 2013, Dkt. No. 108. Motions were heard by the Court on January 31 and February 1, 2013. Because of the last-minute filing of the Motion, and the proximity to trial, the Court ruled that the Government could file its response post-trial. The Court did not set a specific date by which the response should be filed.

[2] A virtually identical motion was filed just prior to the instant one by the defendant in a related case, *United States v. Gilberto Lerma Plata*, CR 11-238-1. On January 31, 2013, while the instant motion was pending before this Court, Judge Cathleen Kollar-Kotelly issued a Memorandum Opinion and Order denying the motion, and adopting the position of the

1

The Government opposes Defendant's Supplemental Motion to Suppress Wiretap Evidence and respectfully asks this Court to deny the motion on the basis that: (1) the court had authority to permit interceptions within the United States of communications which took place outside of the United States and (2) the intercepts complied with the court's order.

## STATEMENT OF FACTS

Defendant, a citizen of Mexico, was charged with one count of conspiracy to manufacture and distribute five kilograms or more of cocaine and 1,000 kilograms or more of marijuana, knowing and intending that it would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 960, and 963. The conspiracy began around the year 2000, and continued through 2010. On August 19, 2011, Defendant was extradited to the United States on the instant Indictment. Trial commenced February 11, 2013. On February 26, 2013, a jury found Defendant guilty as charged. Sentencing is set for May 13, 2013.

The Government's evidence at trial established that the Gulf Cartel (hereinafter "Cartel"), a Mexico-based criminal organization, sometimes known as "The Company," was responsible for the distribution of multi-ton quantities of cocaine and marijuana from Mexico into the United States. The evidence also showed the Cartel maintained an armed faction, known as "Los Zetas," which was made up of ex-military personnel. "Los Zetas" acted as enforcers and hit-men to protect the drug trafficking territory of the Cartel from rival drug traffickers.

The Government's evidence showed that after starting out as a corrupt police officer, Defendant rose through the ranks of the Cartel, ultimately reaching the rank of Plaza Boss or Plaza Commander for the border town of Los Guerra. In a series of judicially authorized wiretaps, the subject of the instant Motion to Suppress, Defendant was intercepted discussing

---

Government in all material respects. Dkt. No. 28. The Government adopts that opinion in the instant matter and incorporates the court's findings and reasoning herein.

shipments of cocaine and marijuana, the transportation of bulk cash and acts of violence against suspected informants with other members of the conspiracy. The Government played forty-seven of those intercepted calls during the trial.

## THE WIRETAP INVESTIGATION

In June 2006, Special Agents with the Drug Enforcement Administration (hereinafter "DEA") began an investigation into the drug-trafficking activities of Gulf Cartel in Mexico, the United States, and elsewhere. The DEA's primary method in identifying and obtaining evidence against the Cartel's leadership was by intercepting their telephone calls.

During the investigation, the DEA Houston Field Division intercepted communications from over 100 different telephones used by Cartel members. Prior to intercepting calls on each telephone, the Government applied for and obtained judicial authorization from United States District Court judges in the Southern District of Texas. Once the order was obtained for each telephone, DEA provided the order to the telephone service provider and began monitoring the phone calls in a DEA wire room in Houston, Texas.

As part of the wiretap investigation, the DEA intercepted calls on telephones used by Defendant and other members of the conspiracy with whom he was speaking. Defendant now seeks to suppress these calls, which occurred on telephones designated as Target Devices 12, 21, 22, 31, 37, and 49.[3]

As established at trial, the DEA's ability to intercept the telephones utilized by Defendant and his co-conspirators was limited by several factors that are of great significance in evaluating the legality of the interceptions. First, the DEA could only intercept calls made on Mexican

---

[3] A complete listing of the dates of the individual Orders for each Target Device, as well as their respective International Mobile Subscriber Identity ("IMSI") and Urban Fleet Mobile Identifier ("UFMI") numbers, is set forth in Defendant's Motion at pp. 2-3.

cellular phones if they were being used in close proximity to the Mexico/United States border. (Trial Tr. A.M. Session Excerpt, 6, February 12, 2013.)  Second, calls made in Mexico are only intercepted if the user set the telephone in the "roam" mode such that the phone would seek the nearest available cell tower, here United States cell towers, regardless of the network with which it was associated. *Id.* If both of the preceding factors existed, calls from inside Mexico that routed through cell towers located within the United States could be intercepted pursuant to the court's order. *Id.* If the phone's user strayed too far from the border, or turned off the "roam" function, the call could not be intercepted. *Id.* The actual interceptions occurred in Houston, Texas, in the DEA's wire room. *Id.* at 5.

Pursuant to Rule 16, the Government provided Defendant with copies of all recordings intercepted over Target Devices 12, 21, 22, 31, 37, and 49, those at issue in this case; copies of Line Sheet Reports for all pertinent and non-pertinent intercepted calls over each of those Target Devices; and the corresponding Title III affidavits, applications, and orders for those Target Devices.

## ARGUMENT[4]

I. **THE COURT HAD AUTHORITY TO AUTHORIZE INTERCEPTIONS WITHIN THE UNITED STATES OF COMMUNICATIONS WHICH TOOK PLACE OUTSIDE OF THE UNITED STATES.**

Title III of the Omnibus Crime Control and Safe Streets Act authorizes a district court to grant an application for interception of specific wire, oral, or electronic communications.  18

---

[4] The Government concedes Defendant's standing with respect to each of the six challenged Target Devices, as raised at pp. 5-6 of his Supplemental Motion, as he was intercepted talking on each of them. *United States v. Williams*, 580 F.2d 578, 583 (D.C. Cir. 1978); *Alderman v. United States*, 394 U.S. 165, 176, 89 S.C. 961 (1969).   The Government also concedes that all of the intercepted phones were physically located in Mexico, as argued by Defendant in his Motion at pp. 6-7.  However, Defendant mischaracterizes the interceptions as having occurred "from Mexican phone lines."  These interceptions involved no "phone lines" whatsoever, but rather cellular transmissions intercepted on U.S. cellular towers.

U.S.C. § 2518.  The application must be filed with a judge of competent jurisdiction.  18 U.S.C. § 2518(1).  Approval of the application depends upon specific findings of the district court.  18 U.S.C. § 2518(3); *see also United States v. Becton*, 601 F.3d 588, 595 (D.C. Cir. 2010) (citing *United States v. Carter*, 449 F.3d 1287, 1292 (D.C. Cir. 2006)).  The district court may approve wiretap interceptions within the territorial jurisdiction of the court and outside the territorial jurisdiction of the court, but within the United States, in the case of a mobile interception device.  18 U.S.C. § 2518(3).  The district court's order authorizing the interception must specify:

> (a) the identity of the person, if known, whose communications are to be intercepted; (b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted; (c) a particular description of the type of communication sought to be intercepted, and a statements of the particular offense to which it relates; (d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and (e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

18 U.S.C. § 2518(4).

Defendant argues that Title III does not grant authority to the courts to authorize the interception of communications that occur outside of the United States.  As explained below, Defendant's position is not supported by case law, and as such, Defendant's Motion to Suppress on these grounds should be denied.

**A. For Jurisdictional Purposes, Interception May Occur in Several Locations.**

The jurisdictional limitation on wiretaps is set forth in 18 U.S.C. § 2518(3), which empowers a judge to "enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting."  Interception is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use

of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Defendant argues that "a fair reading" of Title III suggests a lack of Congressional intent to allow for interception of communications in another country. (Mem. in Supp. of Def.'s Mot. to Suppress Evidence 11.) Further, Defendant suggests that Congress had not contemplated that interception could occur outside the United States. However, Defendant fails to recognize that interception did not occur outside the United States in the instant case. Here, interception occurred in a wire room in the Southern District of Texas, within the United States and within the territorial jurisdiction of the authorizing court.

The statutory definition is silent as to where interception occurs for jurisdictional purposes. *United States v. Rodriguez*, 968 F.2d 130, 135-36 (2d Cir. 1992). However, the Second Circuit held that:

> [T]he language of § 2510(4), the legislative history of that section, and the policy considerations of Title III all persuade us that for purposes of § 2518(3)'s jurisdictional requirement, a communication is intercepted not only where the tapped telephone is located, but also where the contents of the redirected communication are first to be heard.

*United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992).

Since *Rodriguez*, courts have squarely held that interception occurs in at least two places: where the target device is physically located and where the interception is heard by investigators for the first time. *United States v. Luong*, 471 F.3d 1107, 1109 (9th Cir. 2006) ("The most reasonable interpretation of the statutory definition of interception is that an interception occurs where the tapped phone is located and where law enforcement officers first overhear the call."); *United States v. Ramirez*, 112 F.3d 849, 852 (7th Cir. 1997) (holding that interception occurs where the calling device is located, where the receiving device is located, and where law enforcement first hears the communications); *United States v. Denman*, 100 F.3d 399, 403 (5th

Cir. 1996) ("We agree with the reasoning of the Second Circuit and now hold that interception includes both the location of the tapped telephone and the original listening post, and that judges in either jurisdiction have authority under Title III to issue wiretap orders."); *United States v. Savoy*, ___ F. Supp. 2d ___, 2012 WL 3272146 (D.D.C. Aug. 3, 2012) (concluding that interception takes place at the location of the target device and the location of the wire room).

The location of the interception was the key issue in *United States v. Cosme*, 2011 WL 3740337 (S.D. Cal. Aug. 24, 2011). In accord with the Second, Fifth, Seventh, and Ninth Circuits, the United States District Court for the South District of California denied a motion to suppress the contents of a wiretap because the location where the contents of the calls were first heard was within the authorizing court's territorial jurisdiction. *United States v. Cosme,* 2011 WL 3740337 (S.D. Cal. Aug. 24, 2011). In *Cosme*, the defendants were members of the "Fernando Sanchez Organization," suspected of importing controlled substances from Mexico into the United States. *Id.* at *1. The FBI sought a number of authorizations accompanied by affidavits. The authorizing judge was specifically informed that the target devices were physically located in Mexico and that the only way a call could be intercepted was when the phone accessed a United States cell tower. *Id.* at *11. The defendants filed a motion to suppress alleging the district court's order of approval exceeded its authority provided by Title III. *Id.* at *8. Specifically, the defendants argued that Title III did not authorize a district court judge to permit the United States to intercept communications that occurred entirely in a foreign country. *Id.* The government conceded that Title III did not permit courts to authorize wiretaps in Mexico, but countered that the language of Title III does not "'suggest that Congress limited the ability of a judge to authorize the interception of those conversations which occur solely in the United States.'" *Id.* at *8. In *Cosme*, the government established that communications were

only intercepted if that device accessed a cell tower on the United States network and devices only accessed the United States network if they were in close proximity to the border between the United States and Mexico. *Id.* at *11.

The *Cosme* court held that the record conclusively established that the wire room where the intercepts would be heard for the first time was located in the Southern District of California. *Id.* at *10-11. The court joined the opinion of the Second, Fifth, Seventh, and Ninth Circuits finding that interception occurs in at least two locations—the physical location of the target device(s) and the physical location of the wire room. *Id.* at *9. Because the wire room used to conduct the court-authorized wiretaps was physically located within the court's territorial jurisdiction and the contents were first heard by agents within the court's territorial jurisdiction, all communications were intercepted within the authority conferred by 18 U.S.C. § 2518(c). *Id.* at *10. In denying the defendant's motion to suppress, the court explained, "[d]efendants and conspirators committing criminal offenses in the San Diego area intercepted within the Southern District of California are not exempted from the valid wiretap order by making their plans across the border." *Id.*

Defendant suggests that the district court exceeded its authority under Title III because the contents of the interceptions were communications occurring solely between two people in Mexico. (Mem. in Supp. of Def.'s Mot. to Suppress Evidence 7-13). Defendant ignores the court's ruling in *Cosme*, and instead advances essentially the same legal argument made by the defendants and rejected by the court in *Cosme*. Defendant only puts forth legal precedent which establishes that a United States court cannot authorize a foreign wiretap. In doing so, Defendant fails to understand that United States courts have held Title III does not apply extraterritorially as a way to include evidence rather than exclude evidence. *United States v. Barona*, 56 F.3d 1087,

1090-91 (9th Cir. 1995) (holding that Title III did not apply extraterritorially and thus did not have the affect of excluding evidence obtained by the Danish authorities, in accordance with Danish law, that was subsequently used in a United States prosecution); *United States v. Cotroni*, 527 F.2d 708, 711 (2d 1975) (holding that Title III did not apply where the communications routed through United States cell towers because Title III's application depends on the place of interception, not the route followed by communications and as such failure to comply with Title III was not grounds to exclude the evidence); *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974) (holding that Title III did not apply extraterritorially because wire communication is meant to refer to communication through United States networks, not communications in a foreign country).[5] Further, Defendant fails to recognize the distinction between a court authorizing interceptions to occur on foreign soil and a court authorizing interceptions to occur within the United States.[6] Case law provides that Title III grants United States courts the authority to

---

[5] The Defendant cites *United States v. Toscanino*, 500 F.2d 267 (2d. Cir. 1974), in further support of his argument that a federal judge lacks the authority to issue a foreign wiretap. While the court in *Toscanino* also stated that Title III does not apply outside of the United States, *Id.* at 279, just as in the *Angulo-Hurtado* case, the court made it clear that "[t]he term 'wire communication,' as used in the statute, 18 U.S.C. § 2510(1), is intended to refer to communications 'through our Nation's communications network.'" *Id.* (quoting 1968 U.S.C.C.A.N. 2178). *Toscanino* does not help advance the Defendant's argument because it only stands for the proposition that Title III does not give authority to United States courts to authorize wire intercepts abroad. In the instant case, the intercepts occurred within the United States, more specifically, within the Southern District of Texas. The Second Circuit excluded the evidence obtained by the Uruguayan officials because the defendant was physically abused, denied food and water, and forcefully kidnapped before returning to the United States for trial and that conduct shocked the judicial conscience. *United States v. Toscanino*, 500 F.2d 267, 276 (2d Cir. 1974).

[6] Courts have squarely held that Title III does not apply extraterritorially to wire communications intercepted outside the United States by foreign officials. In so finding, courts focus on the constitutional protections afforded by the Fourth Amendment and determine if the acts by foreign officials shocks the conscience or the acts by the United States officials is so substantial that it constitutes as a joint venture. The courts did not apply Title III because it could have had the affect of excluding the evidence. This point is further evidenced by the courts overwhelming application of the good faith exception, even where the courts have found the evidence to be a

permit the interception within the United States of wire communications regardless of where they occur.[7]

Defendant also relies on *United States v. Angulo-Hurtado,* 165 F.Supp.2d 1363, 1369 (N.D. Ga. 2001) and concludes that "a federal judge lacks the authority to wiretap a foreign phone." (Mem. in Supp. of Def.'s Mot. to Suppress Evidence 13). Defendant's conclusion is misguided. In *Angulo-Hurtado*, the defendant challenged a United States based wiretap on the grounds that probable cause was partly based on an illegally obtained Colombian wiretap. *Id.* at 1367. The defendant asked the court to apply the Title III standards in its review of the Colombian wiretap to conclude that it was illegally obtained. *Id.* at 1369. The court refused to review the Colombian wiretap under the requirements of Title III stating that no authority existed for the application of Title III to wiretaps conducted by foreign agencies. *Id.*

> As these cases explain, Congress intended Title III to protect the integrity of United States communications systems against *unauthorized interceptions taking place in the United States*. If Congress had meant to require law enforcement agencies to satisfy Title III for interceptions conducted outside the United States, it would have provided some mechanism by which agents could obtain such approval. Congress did not do so.

---

result of either an investigation that shocks the conscience or a joint venture. The case law cited by Defendant involved wire intercepts initiated by foreign officials. As such, the case law cited by Defendant is inapposite. Here, the interception was initiated by United States officials and the interception took place in the United States.

[7] The D.C. Circuit has not specifically reached the issue. However, Chief Judge Lamberth has endorsed the *Rodriguez* approach at the district court level, holding that "cell phone communications are deemed intercepted at two places: where the tapped telephone is located and where the communications are overheard." *United States v. Savoy*, — F. Supp. 2d —, 2012 WL 3272146, at *13 (D.D.C. Aug. 3, 2012) (internal quotes and citation omitted) (finding that the District Court had jurisdiction to issue a wiretap order authorizing interception of the defendant's cellular telephone where the affidavits in support of the application indicated that the interceptions would be monitored at the Federal Bureau of Investigation's Washington Field Office); *United States v. Lerma-Plata*, No. 11-CR-238, Mem. Op. & Or. at 12 (D.D.C. Jan. 31, 2013) (concluding that the District Court had jurisdiction to issue a wiretap order authorizing interception of the defendant's cellular telephone where the affidavits in support of the application expressly stated that the targets were in Mexico and the cellular provider for the target phones was Mexico-based Nextel).

*Id.* (emphasis added).

Contrary to Defendant's assertion, *Angulo-Hurtado* supports the Government's position that a United States court has the authority to permit interceptions within the United States of wire communications occurring in a foreign country when the communications are intercepted in the United States. In its analysis of Congress' intent, the court in *Angulo-Hurtado* makes clear that Title III governs *interceptions* taking place within the United States and is not concerned with where the communications themselves are taking place, which is a key factor to consider when analyzing the instant case.

The Government does not dispute that a United States court lacks the authority to issue a foreign wiretap; that is to say that a United States court lacks authority to authorize *interceptions* outside of the United States.  However, the instant case deals with interceptions that occurred within the United States, more specifically, within the Southern District of Texas.[8]  Law enforcement officials were able to intercept calls and only intercept those calls that passed through cellular towers located in the United States.  Like the intercepted calls in *Cosme*, the only calls intercepted by agents were those that routed through the United States network.

Defendant also mistakenly relies on *United States v. Cotroni*, 527 F.2d 708 (2d Cir. 1975). Defendant argues that *Cotroni* supports the proposition that the passage of Defendant's telephone conversations through United States cellular towers does not give the court authority to issue a wiretap order.  In *Cotroni*, the defendants were convicted in the Eastern District of New York of various drug charges.  *Id.* at 710.  The prosecution relied in part on wiretap evidence provided by the Canadian government.  *Id.* at 710.  The defendants argued that the Canadian wiretaps should be analyzed under Title III in part because their telephonic

---

[8] The Defendant's argument that suppression should be granted because the application failed to state the location of the facility or the location of the wire room is addressed below.

communications passed through United States communication networks, despite being intercepted in Canada. *Id.* at 711. In response to the defendants' contention the court looked at Congress' intent in enacting Title III and stated:

> We think this reliance is misplaced. *Congress sought by Title III to regulate interceptions, not wire communications*. See Act of June 19, 1968, P.L. 90—351, s 801(a)—(d), 82 Stat. 211. *Thus, it is not the route followed by foreign communications which determines the application of Title III; it is where the interception took place*.

*Id.* at 711. (emphasis added).

Defendant ignores the clear holding of the circuit courts that the authority granted to courts by Title III is triggered by the location of the intercepts and not where the communications take place to conclude that "a United States court has no judicial authority to order the monitoring and interception of communications between telephones located entirely in a foreign country." (Mem. in Supp. of Def.'s Mot. to Suppress Evidence 14). Defendant's argument is without merit because the wire room was located within the authorizing court's territorial jurisdiction. The target devices may have been physically located in Mexico but the wire room was located in the Southern District of Texas. The communications were first heard in the South District of Texas within the United States jurisdiction, which was within the authorizing district court's territorial jurisdiction. Because the listening post was within the authorizing court's territorial jurisdiction, the court had the authority to permit interception. Furthermore, the communications were intercepted within the Southern District of Texas in compliance with the court's order. Therefore, Defendant's lack of authority argument should be rejected and his motion to dismiss on these grounds should be denied.

### B. The Intercepts Complied With the Court Order.

Defendant next argues that the Court Orders did not authorize the interception of communications in Mexico and therefore the electronic surveillance was not conducted in conformity with the Order. Defendant's argument is based on a misinterpretation of the language of the Order and that the electronic surveillance was conducted in conformity with the Order. Therefore, Defendant's motion to suppress on these grounds should be denied.

In *United States v. Lerma-Plata*, Judge Kollar-Kotelly addressed the same argument and found the argument without merit. No. 11-CR-238, Mem. Op. & Or. at 17-18 (D.D.C. Jan. 31, 2013). The Court concluded that if the order clearly states that the court is granting authority within the territorial jurisdiction of the United States and the interception takes place within the territorial jurisdiction of the United States then it complies with 18 U.S.C. 2518(10)(a)(iii) and does not warrant suppression. *Id.*

Defendant misunderstands the standard language of the various orders which states: "IT IS FURTHER ORDERED that in the event [a Target Device] is transferred outside the territorial jurisdiction of this Court, interception may take place within any other jurisdiction within the United States." (*See, e.g.,* Feb. 20, 2007, Or. Auth. Interception of Elec. Wire at 6 (Target Device 12)). All target device Orders contain the same language. Defendant argues that the Order only authorized interception of communications when the target devices were located in the United States. As explained in the previous section, courts have consistently held Title III is concerned with the location of the *interception* of communications, not the location of the communication devices. The Order makes clear that the court granted the authority for interceptions to take place anywhere within the United States, if the target devices were outside of the jurisdiction of the

court. Here, all of the intercepts took place within the Southern District of Texas in compliance with the Order. Defendant's argument lacks merit and his motion to suppress should be denied.

## CONCLUSION

WHEREFORE, the Government respectfully requests that this Court make a finding that an evidentiary hearing is not necessary for ruling on this motion and deny Defendant's Motion to Suppress Wiretap Evidence in its entirety.

Respectfully Submitted,

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice


By:  /s/ Sean Torriente
Sean Torriente, Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice
145 N Street, NE
East Wing, Second Floor
Washington, D.C. 20530
Tel: 202-353-3832
sean.torriente@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendant, this 6th day of May 2013.

      By:   /s/ Sean Torriente
              Sean Torriente, Trial Attorney
              Narcotic and Dangerous Drug Section
              Criminal Division
              United States Department of Justice
              145 N Street, NE
              East Wing, Second Floor
              Washington, D.C. 20530
              Tel: 202-353-3832
              sean.torriente@usdoj.gov