UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA            )<br>                                                               )<br>                                                               )<br>            v.                                                 )     No.  08-CR-57 (BJR)<br>                                                               )<br>                                                               )<br> AURELIO CANO FLORES,                 )<br>                                                               )<br>            Defendant.                             )  | |

**Defendant's  Motion for Certificate of Appealability**

Defendant Mr. Aurelio CANO-FLORES,  pursuant to 28 U.S.C. §2253(2), by and through undersigned counsel, respectfully submits this motion for certificate of appealability. A certificate of appealability generally may issue "if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which in turn requires demonstrating that "jurists of reason would find it debatable whether the [applicant] states a valid claim of the denial of a constitutional right," *United States v. Pollard*, 416 F.3d 48, 54 (D.C. Cir 2005) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  Mr. Cano-Flores submits he has provided reasons to grant a certificate of appealability (COA) here based upon: (1) trial counsel's failure to communicate with Mr. Cano-Flores during his two week trial which

1

denied Mr. Cano-Flores his Sixth Amendment right to counsel; and (2) counsel's failure to properly cross examine key witnesses.

I. Reasonable judges can debate on the issues before this Court

Reasonable judges can debate that when trial counsel does not communicate with his client at all during the actual trial, and fails to cross examine the government's star witness on an important evidentiary issue, that client has suffered prejudice. The standard of reasonableness for effective representation requires that an attorney be able to communicate with his client, especially during trial.

On January 6, 2021, this Court denied defendant's motion pursuant to 18 U.S.C. §2255 based upon claims of ineffective assistance of counsel due to a violation of his Sixth Amendment rights. Mr. Cano-Flores asserts that he was prejudiced by the fact that there was no communication at trial between him and his lawyer and that his lawyer failed to cross examine a key witness due to the communication error. When a lawyer does not speak to his client during the trial process, on its face, the prejudice is clear.

While witnesses gave testimony that wasn't truthful, Mr. Cano-Flores, who only speaks and writes in Spanish, had nothing more than a notebook to write in to give his lawyer a clue that there was false testimony coming from the witness stand such that he could cross examine on the lies.

These clues written in the notebook by Mr. Cano-Flores were never discussed with his lawyer during the trial so that the substance of witness testimony could be properly challenged during cross examination. If Mr. Cano-Flores's lawyer had been able to understand what Mr. Cano-Flores was trying to communicate to him at the time of the false testimony, it would have influenced his cross-examination of these witnesses. But because his lawyer, Mr. Gilbert hardly spoke or read Spanish, Tr. 12/4/18 @ 74-74, nor understand the defendant's written notes, and did not discuss them with the defendant during the trial or later, the defendant was unable to effectively communicate and cross examine on false testimony and bias which prejudiced him. Tr. 11/27/18 @ 104. Because there was no daily communication with Mr. Gilbert during the actual trial, the defendant, Mr. Cano Flores, could not confront the witnesses against him and could not relate critical evidentiary issues to his trial attorney in a process he already had difficulty understanding.

     Mr. Cano-Flores speaks no English. His lawyers spoke hardly any Spanish. Not being able to communicate and converse with your lawyer during trial is a "fundamental defect" which caused a "complete miscarriage of justice." *United States v. Weaver*, 112 F.Supp. 3d 1, 6 (D.D.C. 2000)(citation omitted).

II. This Court's opinion

  A. Lack of communication

Previous court filings on behalf of Mr. Cano-Flores state that the concern is not a 2nd translator at the table, but communication with Mr. Gilbert.[1] This Court held in its opinion reversing the Magistrate Judge, that counsel's performance did not fall below n "objective standard of reasonableness" and reasoned that "no [court ] has held that a defendant has the right to be able to do both (have an interpreter at counsel table and a courtroom interpreter) simultaneously." Dkt. 457, p. 7. But defendant's complaint is not that there was no interpreter seated at counsel's table during the entirety of the trial, but that one wasn't utilized by trial counsel in the midst of trial, during trial breaks, lunch hours, or before Court or after Court to discuss not only the notes that the Court describes in its opinion, Id. at 9-10, but the testimony that came from the witness stand that so concerned Mr. Cano-Flores at that moment in time.   Mr. Cano Flores's point is that during the trial, there was NO communication from Mr. Gilbert other than a nod. Reasonable jurists certainly could debate whether this is sufficient Sixth

---

[1] Defendant's supplemental brief stated "Even more troubling is the fact that Mr. Gilbert failed to provide any translator to facilitate communication with Mr. Cano-Flores while trial was in progress." See Supplemental motion to vacate,  Dkt # 350 @ 18 .   See also, ECF 388.

4

Amendment representation.² The Sixth Amendment guarantees "more than a pro forma encounter between the accused and his counsel." Mitchell v. Mason, 325 F. 3d 732, 744 (6th Cir 2003).  The duty of counsel to confer with the defendant serves several important purposes.  First, "it assures that the client will have the opportunity to assist with his own defense," which is vital because the client possesses superior knowledge "of the facts and circumstances of his case."  Gov't of the V.I. v. Weatherwax, 77 F.3d 1425, 1436 (3d Cir. 1996) (Internal quotation marks and citation omitted).  "Second, the client's views and desires concerning the best course to be followed are relevant considerations that must be evaluated and taken into account by counsel.

Subsequent cases have liberally construed Geders³.  Courts have held that defendants were deprived of their Sixth Amendment right to counsel when they were prevented from discussing the trial with the attorney during a one-hour lunch recess (e.g., U.S. v. Conway, 632 F.2d 641(5th Cir. 1980) and during even briefer, routine recesses in the trial day (e.g., U.S. v. Allen, 542 F.2d 630 (4th Cir 1976)(recesses lasting 20 minutes and "a munite"")).

---

² The Court also states that "counsel's decision to pay attention to witness testimony rather than engage in substantive discussion with his client was presumptively reasonable" Id. at p. 10. This may be, but what Mr. Cano-Flores has argued is that these substantive discussions could have taken place during breaks, lunch hour or before and after court which would have perhaps cured the cross examination failure.
³ 425 U.S. 80, 88 (1976).

5

The import of these decisions is clear:  the opportunity for the defendat to confer with the attorney throughout trial is an essential component of the right to effective assistance of counsel.

The Court also reasons that because "Gilbert visited the Defendant at the jail twice during the two-week trial…" that that sufficed as sufficient communication. Mr. Cano-Flores point regarding this communication is that the first jail visit was the evening after a day of voir dire. No one had testified in the case yet and Mr. Cano-Flores did not communicate with Mr. Gilbert <u>during</u> voir dire.  The second visit on 2/18/13 was after five government witnesses had testified, including DEA Agent Lewis. <u>See</u> Minute entry on docket for February 18, 2013. <u>See also</u> Defense Ex. 2.

Mr. Gilbert's failure to meet personally with his client during trial and to ensure that his client had the means to communicate directly with him, in real time, while witnesses were testifying, further denied Mr. Cano-Flores's right to consult with his attorney *in a meaningful way.* (emphasis added).  As the Supreme Court has observed that a defendant in a criminal case must often consult with his attorney during

the trial … with tactical decisions to be made and strategies to be reviewed." <u>Geders v. United States</u>, 425 U.S. 80, 88 (1976).

6

The lack of communication in this case rose to the level of a constitutional deficiency. It cannot be that nodding from Mr. Gilbert is equal to meaningful communication with the defendant. And because Mr. Gilbert did not speak Spanish, it is more probable that a nod from Mr. Gilbert with assent to the defendant communicated something other than what was in any note that was passed.

Mr. Cano-Flores submits that even if trial counsel communicated with Mr. Cano-Flores pretrial, as the Court ruled, it is at a minimum, debatable as to whether such communication was sufficient for counsel to satisfy his obligations under the Sixth Amendment given the unpredictable nature of trials that requires constant changes or adjustments to any strategy developed before testimony is heard.

B.  <u>Lack of communication caused lack of cross examination</u>

This Court also held that the defendant never showed that he was actually prejudiced. Reasonable judges could debate this question.  Mr. Gilbert failed to subpoena cell tower records and he never asked the government's star witness, DEA Agent Lewis, whether the roaming feature was on Mr. Cano-Flores's cell phone and what effect that would have on the cell tower evidence.   Mr. Gilbert's failure to cross examine Agent Lewis or to subpoena records regarding the location of the cell towers cannot be

traced to any strategic decision. In fact, Mr. Gilbert admitted that he did not extensively cross-examine Agent Lewis on this point because he suffered under the mis-impression that he could not. See Dkt 162, at page 2. This is particularly important because in a proffer to the District Court, the United States said that they captured Cano-Flores's phone calls on cell towers that were in the United States. See Dkt. 152.

This Court held there was jurisdiction based on this proffer of cellular towers in the United States. See Dkt. 181. Again, this was based on the testimony of DEA Agent Lewis. Id. Mr. Cano Flores wanted to challenge this assertion by the USA before trial. The DEA's ability to intercept the telephones used by Mr. Cano-Flores and his co-conspirators was limited. First, DEA could only intercept calls made on Mexican cellular phones if they were being used in close proximity to the Mexico-United States border. See TR. A.M. Session excerpt, 6, 2/12/13. Second, calls made in Mexico could only be intercepted if the user set the telephone in the "roam" mode such that the phone would seek the nearest available cell tower. If both of the factors existed, calls from inside Mexico that routed through cell towers located within the United States could legally be intercepted pursuant to the Court's order. Id. Conversely, if the "roam" function was turned off, the call could not be intercepted. See Dkt 152 @4.   This issue was raised before

8

trial. Mr. Cano-Flores felt the issue was particularly important because if Agent Lewis had been cross examined about the location of the cell towers, whether Mr. Cano-Flores phone was on roaming, or even if they had phone records of Mr. Cano Flores, there would have been a much better basis for suppressing the wiretapped phone calls depending on the answers of Agent Lewis.

Had Mr. Gilbert subpoenaed the cell phone records of Mr. Cano-Flores, he could have used them as impeachment against Agent Lewis. If he could show the jury that agent Lewis was lying or made a serious mistake in capturing his cellular calls, the verdict very well could have been different. See Tucker v. Ozmint, 350 F.3d 433, 444 (4th Cir. 2003) ("[T]rial counsel have an obligation to investigate possible methods for impeaching a prosecution witness, and failure to do so may constitute ineffective assistance of counsel."  "It is especially important that counsel adequately investigate the case, 'because only when reasonable investigation has been performed is counsel in a position to make informed tactical decision.'" United States v. Barbour, 813 F.2d 1232, 1234 (D.C. Cir. 1987). Of significance is that the notes that Mr. Cano Flores showed Mr. Gilbert said "roaming" indicating that he wanted Mr. Gilbert to ask agent Lewis about this, but was without a means to do so given the language barrier.     Mr.

Cano Flores asked Mr. Gilbert to get cell tower records before trial and again during trial. If these records had been obtained and they had shown no communication between Mr. Cano Flores's phone and a cell tower in the United States, there would be no jurisdiction, and thus, no case. Mr. Gilbert states that he mistakenly believed the government would have these records. *See* Dkt 162 @ 2. Because Mr. Gilbert failed to subpoena these critical evidentiary records, and made "a judgment call that [he] make at the time," Mr. Cano Flores was not able to confront DEA Agent Anthony Lewis. See Gilbert Declaration, Paragraph 15.

In Government Exhibit 8, Mr. Cano is asking if the DEA Agent got it wrong and about the phone calls and "roaming." There is no indication that his questions were ever addressed or answered. In Government Exhibit 9, Mr. Cano Flores says "I hope you understand me." This indicates he was having communication problems. Mr. Cano-Flores testified that Mr. Gilbert never discussed these notes with him . Tr. 11/28/18 @ 70. Mr., Gilbert never reviewed trial notes. Tr. 12/3/18 @ 21.    Although this Court held that the "ojo notebook system" of Valencia and Ms. Hughes visiting the defendant at night at the jail and reviewing the ojo notes after the conclusion of the days' proceedings sufficiently covered Mr. Gilbert's communication with his client, if this were the case, every lawyer in town would send their

10

co-counsel or paralegal, who had no role in the trial itself, to communicate with the client. That this is not a standard practice creates at least a debatable question as to whether this practice was deficient and whether is prejudiced Mr. Cano-Flores.

The Court found that the defendant did not allege with enough specificity what the witnesses were lying about. But this too is debatable. The defendant wrote notes about witness' lies to Mr. Gilbert, which he and Ms. Hughes failed to preserve. This Court stated that "counsel understood these notes and acknowledged them and that "defendant was also able to convey information to counsel through a translator, both before and during the trial," yet there is no evidence of this anywhere in the record. In fact, Mr. Gilbert testified that he never spoke to anyone during the trial about the notes. See Gilbert Declaration.[4] And Mr. Cano-Flores heard false testimony from the witness stand that he had not heard before. Tr. 12/6/18 @ 48. This is the point at which there should have been impeachment of the witness, or at least a pointed cross examination with the truth as conveyed from Mr. Cano-Flores to his counsel. Had Mr. Gilbert understood Mr. Cano-Flores, he could have cross examined on the lies which, in turn would, have affected

---

[4] Neither declaration states that they understood these notes <u>and responded to them</u>.

11

the verdict in this case. If the jury had thought that just one government witness were lying, then the outcome of the case would have been much different.

### III. Conclusion

Here, reasonable judges could debate whether Mr. Gilbert's performance "'fell below an objective standard of reasonableness,' and 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' "*Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014) (quoting *Strickland*, 466 U.S. at 687– 88, 69). It is debatable that counsel's performance "undermine[d] the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693.  And it is debatable that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense."  U.S. CONST. AM. VI.  Because judges could debate whether Mr. CanoFlores was deprived of this most fundamental right and whether the proceedings against him were fundamentally unfair,  he therefore respectfully asks the Court grant him a certificate of appealability.

Respectfully submitted,

By:   Kira Anne West

\_\_\_/s/\_\_\_\_._____
Kira  Anne West, Esq.
712 H Street N.E., Unit 509
Washington, D.C.  20002
(202)-236-2042
kiraannewest@gmail.com
Attorney for Mr. Cano-Flores

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was sent to counsel of record via the CM/ECF filing system, on this 4th day of February 2021.

/s/
Kira Anne West