**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MIGUEL TREVINO MORALES**<br>**a.k.a. "Z-40," a.k.a. "Zeta40," a.k.a. "40," a.k.a. "Cuarenta," a.k.a. "Mike,"**<br><br>**Defendant.** | **CRIMINAL NO. 08-CR-057-04** |

**<u>GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION</u>**

The United States respectfully moves to detain the Defendant, Miguel Trevino Morales, also known as "Z-40," "Zeta40," "40," "Cuarenta," and "Mike," pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is a leader of an international drug trafficking organization ("DTO") that was engaged in extreme violence. As discussed below, the Defendant is charged with drug trafficking and firearm offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, the Defendant faces significant jail time for incredibly serious offenses, including multiple offenses that carry mandatory minimum sentences; is known to use and carry firearms and utilize violence to maintain his position of power; potentially has access to substantial amounts of drug proceeds in the form of untraceable cash; has no immigration status in the United States; and is subject to an immigration detainer. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

**<u>BACKGROUND</u>**

On August 20, 2024, the United States District Court for the District of Columbia issued an arrest warrant for Trevino Morales based on an indictment in this case. That same day, a grand

jury sitting in the District of Columbia returned and filed a Fifth Superseding Indictment (the "Indictment") against the Defendant and his co-defendant, charging him with:

- Count One: Engaging in a continuing criminal enterprise, in violation of 21 U.S.C. §§ 848(a), 848(b), 848(c), and 848(E)(1)(A);
- Count Two: Conspiring to distribute cocaine and marijuana, intending, knowing, and having reasonable cause to believe that the cocaine and marijuana would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963;
- Count Three: Use of a firearm, including a machine gun, destructive device, semi-automatic assault weapon or pistol, during and in relation to a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime, where one or more of such firearms was brandished; discharged; a semi-automatic assault weapon; a machine gun; and a destructive device, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2; and
- Count Four: Conspiring to commit international money laundering, in violation of 21 U.S.C. §§ 1956(a)(2)(A), 1952(a)(2)(B), and 1956(h).

Additionally, with respect to Count One, the Indictment alleges nineteen specific violations of 21 U.S.C. §§ 846, 848(e), 952(a), 959(a), 960, and/or 963, including 5 murder conspiracy violations, 7 international cocaine distribution or attempted international cocaine distribution violations, and 7 cocaine importation or attempted cocaine importation violations.

The Indictment is the product of an extensive, long-term, and ongoing investigation conducted by the Drug Enforcement Administration, Homeland Security Investigations, and Federal Bureau of Investigation into the drug-trafficking activities of the Gulf Cartel and Los

Zetas, two related drug-trafficking organizations ("DTOs") operating in Mexico. The Government anticipates that the evidence at trial will show that from in or about January 2003 through the date of the Indictment, the Defendants engaged in a continuing criminal enterprise and drug trafficking and money laundering conspiracy with the ultimate objective of importing narcotics, namely cocaine and marijuana, into the United States for their own profit.

If this case proceeds to trial, the Government expects its evidence to consist of testimony from cooperating witnesses with direct communications and interactions with the Defendant discussing drug trafficking and drug-trafficking related activities, including extreme violence, and audio recordings of the Defendant and others discussing their criminal activities. This evidence will show that, during the relevant time period, Defendant was a high-ranking member and, later, a principal leader of the Zetas Cartel and its successor organization, "Cartel del Noreste" ("CDN").

The Zetas Cartel (also known as "Los Zetas" and referred to here as "Zetas"), was a violent and prolific drug trafficking organization that imported tonnage quantities of cocaine and marijuana into the United States while using terroristic violence to control large swaths of northern Mexico, including along the border between Mexico and the United States. The Zetas operated primarily in the Mexican states of Coahuila, Nuevo Laredo, Tamaulipas, Zacatecas, San Luis Potosi, and Veracruz. Between 2000 and 2010, the Zetas formed an alliance with the Gulf Cartel, a group of drug traffickers primarily based in northern Mexico, to form an organization known as "The Company." The Gulf Cartel used the Zetas as the armed militaristic wing of the Cartel to maintain control of drug trafficking routes throughout Mexico. At the beginning, Heriberto Lazcano Lazcano headed the Zetas organization. He recruited both members of the Mexican special forces, along with drug traffickers who never served in the military or with a police force, to join the organization. The Zetas and Gulf Cartel's alliance fractured in the summer of 2010 after

a period of intense violence between the organizations. The Zetas then operated as an independent drug trafficking organization that imported tonnage quantities of cocaine and marijuana into the United States.

Defendant joined the Zetas in or around January 2003. By 2011, he had ascended to the highest levels of the Zetas' leadership. After Lazcano's death in October 2012, Defendant and his codefendant Omar Trevino Morales took over as the leaders of the Zetas. After both defendants were arrested, they renamed the Zetas to CDN. The two continued to control the Cartel and installed various family members to operate the CDN while they were incarcerated. Through the date of the Indictment, the CDN remained the successor cartel to the Zetas and continued the criminal drug trafficking activities previously conducted by the Zetas, and the Defendants remained its leaders.

The Zetas and CDN—and Defendant as a member and later leader of the groups— carried out numerous acts of violence, including murders, assaults, kidnappings, assassinations and act of torture. Defendant executed dozens of residents living around Allende, a small town located in Coahuila, Mexico, in approximately March 2011. In carrying out this and other acts of violence, Defendant possessed, carried, used, and brandished firearms, including machine guns, semi-automatic rifles, and pistols. The Zetas and CDN committed these acts of violence for a variety of reasons, including: (1) promoting and enhancing the prestige, reputation, and position of the Zetas and CDN with respect to rival criminal organizations, including other drug trafficking organizations; (2) preserving, protecting, and expanding the power, territory, and criminal ventures of the Zetas and CDN; (3) keeping victims, rivals, and law enforcement in fear of the Zetas and CDN, their members, and their associates; (4) disciplining its members and associates by punishing disloyalty and failure; (5) enriching the members and associates of the Zetas and CDN through

criminal activity, including narcotics trafficking, theft, extortion, and human smuggling; and (6) seeking reprisal against elected and public officials, members of the military and law enforcement, and others for failing to provide services to the Zetas and CDN.

The Defendant is a Mexican national with no known contacts in the United States, other than any coconspirators. He was paroled into the United States and has no valid visa to remain here. An Immigration and Customs Enforcement detainer is in place if Defendant is released from the custody of the U.S. Marshal's Service.

## LEGAL STANDARDS

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' *or* a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019) (emphasis added); *see also* 18 U.S.C. § 3142(c)(1) ("If the judicial officer determines that the release . . . will not reasonably assure the appearance of the person as required *or* will endanger the safety of any other person or the community . . . ." (emphasis added)). The Government bears the burden of establishing the defendant's danger to the community by clear and convincing evidence, but the Government need only prove the Defendant poses a flight risk by a preponderance of the evidence. *United States v. Munchel*, 533 F. Supp. 3d 1, 8 (D.D.C. 2021) (dangerousness); *Vasquez-Benitez*, 919 F.3d at 551 (flight risk).

When the court finds that there is probable cause to believe that the defendant committed (1) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act or Controlled Substances Import and Expert Act; or (2) an offense

under 18 U.S.C. § 924(c), that finding triggers a rebuttable presumption that no condition or combination of conditions can reasonably assure the defendant's appearance and the safety of others when the court finds. 18 U.S.C. § 3142(e)(3). In making the final determination as to whether the defendant should be detained pending trial, the court must take into account: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## ARGUMENT

Defendant should be detained while awaiting trial because he both poses a dangerous to others and the community and he poses a serious flight risk.

### I. There Is a Rebuttable Presumption that Defendant Is Dangerous and a Flight Risk

Defendant is charged with multiple offenses that carry a rebuttable presumption that the Defendant is both dangerous and a flight risk: Count One charges Defendant with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 858, which carries a mandatory minimum penalty of twenty years' imprisonment and the potential for the death penalty; Count Two charges Defendant with conspiring to distribute cocaine and marijuana for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963, which carries a mandatory minimum penalty of ten years' imprisonment; and Count Three charges Defendant with use of a firearm in violation of 21 U.S.C. § 924(c), which carries a mandatory minimum penalty of up to thirty years' imprisonment. Each of these offenses are qualifying offenses under 18 U.S.C. § 3142(e)(3)—Counts One and Two under subsection (3)(a) and Count Three under subsection (3)(b). Thus, the Court's analysis here begins with a presumption that there is no

condition or combination of conditions that will reasonably assure the appearance of the Defendant and the safety of the community.

## II. All Four Factors Weigh in Favor of the Defendant's Pre-Trial Detention

Defendant cannot overcome this rebuttable presumption in favor of pretrial detention in this case because § 3412(g)'s factors all weigh heavily against him.

### a. The Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses heavily weigh in favor of detention. As described above, Defendant is charged with four serious offense counts and faces a lengthy prison term as a result. He faces a charge that he engaged in a continuing criminal enterprise, and as part of that enterprise he is accused of conspiring to murder members of the Mexican government, citizens of Mexico, members and associates of the Zetas and CDN, members of the Guatemalan government, and Guatemalan drug traffickers and other citizens of Guatemala. *See* Indictment, Count One, Violations 1-5, ECF No. 578. He also faces a charge that he engaged in a decades-long drug trafficking conspiracy to import narcotics into the United States, and used firearms, including destructive devices, during, in relation to, and in furtherance of that conspiracy, including by carrying out or ordering numerous acts of violence to preserve the Zetas' and CDN's power for his own profit and benefit. As a result of his conduct, Defendant faces a significant penalty of life imprisonment and, for Count One, the death penalty.[1]

The charges against the Defendant, and the penalties he faces as a result, underscore both that he poses a danger to others and that he is a flight risk. *See* 18 U.S.C. § 3142(g)(1) (court should

[1] Because of the amount of cocaine and marijuana attributable to his conduct, he faces a base offense level under the U.S. Sentencing Guidelines of 38, and a number of possible enhancements, including for leadership, bribery, and use of a weapon to name a few. With a criminal history category of I, Defendant faces a Guidelines range of life imprisonment.

consider whether the offense is a crime of violence or involves a controlled substance, firearm, explosive, or destructive device); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding that serious nature of offenses and punishments Congress provided for those offenses gave the defendant substantial incentive to flee); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to flee).[2]

b. The Weight of the Evidence Against the Defendant

The weight of the evidence against the Defendant also weighs heavily in favor of his pretrial detention. Throughout the course of the investigation, federal law enforcement agents employed a variety of techniques to investigate the Zetas and CDN, resulting in substantial evidence against the Defendant, including testimony from cooperating witnesses with direct communications and interactions with the Defendant discussing drug trafficking and drug-trafficking related activities—including extreme violence against government personnel, civilians, and cartel members and associates—as well as audio recordings of the Defendant and his associates discussing their criminal activities.

This evidence not only demonstrates the Defendant's dangerousness, *see United States v. Vergara*, 612 F. Supp. 2d 36, 37-38 (D.D.C. 2009), but it also shows that Defendant has

[2] Indeed, courts have recognized that Congress created a rebuttable presumption in favor of pretrial detention because Congress found "based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *United States v. Alatishe*, 768 F.2d 364 at 370 n.14 (D.C. Cir. 1985) (rebuttable presumption for serious drug trafficking offenses included because "the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country," means that "these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences") (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S.Code Cong. & Admin.News 1984, p. 3203).

considerable incentive to flee, *see United States v. Chansley*, 525 F. Supp. 3d 151, 170 (D.D.C. 2021) ("The overwhelming weight of the evidence may further prompt defendant to flee and thus weighs in favor of pre-trial detention.").

c. The History and Characteristics of the Person, and the Nature and Seriousness of the Danger to Others

Given the nature of the Defendant's history and characteristics, the Government addresses both that factor and the nature and seriousness of the Defendant's danger to others together. These factors weigh in favor of detaining the Defendant before trial because he poses a risk to the safety of others and his risk of flight is high.

*Dangerousness*. At trial, the Government anticipates presenting significant evidence that the Defendant engaged in extreme acts of violence, including the execution of dozens of civilian residents living around Allende, Coahuila, Mexico, over the course of his decades-long criminal activity, and in his role as a leader of the Zetas and CDN ordered others to do the same. His ultimate objective was to import massive quantities of cocaine and marijuana into the United States, a direct threat to the health and safety of U.S. residents around the country. He even continued his leadership of the Zetas and CDN from Mexican prison over the last decade. If released pending trial, there is serious risk that Defendant will continue to pose a risk to the safety of others and the community through his drug trafficking activities.

*Flight Risk*. Defendant's history and characteristics establish his serious risk of flight in this case. He is a Mexican national that lacks any known ties to the District of Columbia or the United States other than his coconspirators; he has significant familial and criminal connections in Mexico; and he has potentially significant resources at his disposal through his criminal activities, including drug proceeds in the form of untraceable cash. Moreover, the Defendant has been brought to the United States solely for the purpose of his federal prosecution, and a U.S.

Immigration and Customs Enforcement detainer is in place if he is released from the custody of the U.S. Marshal's Service. Defendant has no reason to remain in this country other than this criminal case and thus presents a significant flight risk if released from custody.

For these reasons, the last two § 3142(g) factors also weigh heavily in favor of Defendant's pretrial detention.

**CONCLUSION**

The relevant inquiry for the Court is whether there are conditions that can be placed upon the Defendant that will reasonably assure the Defendant's appearance at future court proceedings and the safety of the community. For Defendant, there are none. The United States respectfully requests that the Court detain the Defendant pending trial.

Respectfully submitted this 28th day of February, 2025.

MARLON COBAR, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By: *__/s/ Jayce Born__*
Jayce Born
Kirk Handrich
Trial Attorneys
Melanie Alsworth
Acting Deputy Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice
145 N Street, Northeast
Washington, D.C. 20530
(202) 616-2656
jayce.born@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served via ECF to counsel of record, this 28th day of February, 2025.

By: *___/s/ Jayce Born________*
Jayce Born
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice